UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AUGUST F. CORNELL,

                    Plaintiff,

                                                    5:09-CV-0387
v.                                                  (GTS/ATB)

SCOTT KAPRAL, individually and
in his capacity as a police officer with the
Town of Dewitt; and TOWN OF DEWITT,

                    Defendants.
_____

APPEARANCES:                                 OF COUNSEL:

LAW OFFICE OF MARK DAVID BLUM                MARK DAVID BLUM, ESQ.
   Counsel for Plaintiff
P.O. Box 82
Manlius, NY 13104

LAW OFFICE OF FRANK W. MILLER                FRANK W. MILLER, ESQ.
   Counsel for Defendants
6575 Kirkville Road
East Syracuse, NY 13057

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

        Currently before the Court in this civil rights action filed by August F. Cornell

("Plaintiff") is a motion to dismiss (or in the alternative for summary judgment) filed by the

Town of DeWitt and Scott Kapral, individually and in his capacity as a police officer with the

Town of DeWitt. ("Defendants").  (Dkt. No. 21.)  For the reasons set forth below, Defendants'

motion is granted and Plaintiff's Amended Complaint is dismissed.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Claims

Generally, liberally construed, Plaintiff's Amended Complaint alleges, *inter alia*, as follows: (1) in March 2006, "Plaintiff was the Director of Teaching at the Hillbrook Detention Facility in Onondaga County"; (2) "Plaintiff was [also] the owner of Lost Erie Gem and Watch, a consignment retail establishment in the Town of DeWitt that Plaintiff owned for more than 25 years"; (3) "[o]n March 5, 2006, Plaintiff filed two letters entitled 'Observations of Concern' with the psychiatric office of the Onondaga County Corrections Department[, which] document[] several cases of children incarcerated at Hillbrook who, in his opinion, do[] not belong or who do not have police or court records to justify the[ir] detention"; (4) "[t]wo weeks later, . . . [D]efendant Kapral took a sudden and personal interest in Plaintiff by visiting one of Plaintiff's businesses and interrogating employees and making implications that two particular items consigned to Plaintiff had been "stolen"; (5) "[o]n March 27, 200[6],[1] Plaintiff[] retain[ed] counsel[, who] faxe[d] and mail[ed] exculpatory documentation to [D]efendant Kapral to establish conclusively that no thefts of consigned items had occurred and that there was a paper trail as to their whereabouts"; (6) "[o]n April 5, 2006, . . . Defendant Kapral appear[ed] at Plaintiff's classroom at Hillbrook Detention Facility and arrest[ed] Plaintiff on charges that . . . [D]efendant Kapral [knew were] without probable cause"; (7) "[t]hereafter, . . . [D]efendant Kapral and others in the DeWitt Police Department announce[d] the arrest to the media and

---

[1]       While the Amended Complaint alleges the referenced year to be 200*9*, it is clear that "2009" was simply a typographical error,  in light of the surrounding allegations, as well as the statements contained in an affidavit submitted by the attorney who faxed and mailed this documentation.  (Dkt. No. 24, Attach. 4.)

[sought] information from "anyone" who . . . had any transactions with . . . Plaintiff or one of Plaintiff's businesses"; (8) "[a]t the same time and on or about the same date, [D]efendant Kapral [sought] from the DeWitt Town Court an Order seizing Plaintiff's businesses . . . [and] Plaintiff's business records and personal computers"; (9) "[o]n or about and sometime during June of 2006, Plaintiff's attorney secure[d] from [D]efendant Kapral a list of the charges against Plaintiff and note[d] that the alleged victims and charges for which Plaintiff was originally arrested [were] no longer among the charges pending"; (10) "[o]n or about and sometime during June of 2006, . . . [D]efendant Kapral secure[d] an Order to wiretap Plaintiff and Plaintiff's attorney's telephone as part of an attempted 'sting operation'"; (11) "[i]n September of 2006, Plaintiff [wa]s indicted on [eleven] counts of Grand Larceny and other charges based[,] in large part, on tainted testimony and victim statements materially altered by [D]efendant Kapral"; (12) "[o]n or about and sometime during October of 2006, the Indictment against Plaintiff was dismissed by [the] Hon[orable] William Walsh"; (13) "[t]hough given the chance to do so, the District Attorney refused to re-present the case to a Grand Jury because, according to an Assistant District Attorney, they knew that Plaintiff had done no wrong, that . . . [D]efendant Kapral's allegations were just a bill of goods, and that the District Attorney's office informed . . . [D]efendant Kapral

that they did not want to see any more paperwork with . . . Plaintiff . . . and . . . [D]efendant Kapral's name on it"; and (14) "[t]he District Attorney then contacted the Town of DeWitt Court and asked that all of Plaintiff's personal and business property seized at the request of . . . [D]efendant Kapral be returned to Plaintiff."  (Dkt. No. 6.)

3

Based on these factual allegations, Plaintiff asserts the following four claims: (1) a claim of malicious prosecution against Defendant Kapral; (2) a claim of malicious abuse of process against Defendant Kapral; (3) a claim of false arrest against Defendant Kapral; and (4) a claim of municipal liability, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), against the Town of DeWitt. (*Id.*)

Familiarity with the remaining factual allegations supporting these claims in Plaintiff's Amended Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties. (*Id.*)

**B.      Statement of Undisputed Material Facts**

The following is a general summary of material facts that are undisputed by the parties. (*Compare* Dkt. No. 21, Attach. 1 [Def.'s Rule 7.1 Statement] *with* Dkt. No. 24, Attach. 6 [Plf.'s Rule 7.1 Response].)

At all times relevant to this civil action, Defendant Kapral was an investigator employed by the Town of DeWitt Police Department. In March of 2006, Plaintiff was the owner of Lost Erie Gem and Watch, a consignment retail establishment in the Town of DeWitt that Plaintiff owned for more than 25 years. In or around March of 2006, a former customer of Erie Gem and Watch, Mr. Michael Hughes, contacted the Town of DeWitt Police Department about a transaction that he entered into with Plaintiff. Defendant Kapral subsequently collected voluntary sworn affidavits from Mr. Hughes and Mr. Donald Steer, an acquaintance of Mr. Hughes who had dealings with Plaintiff and assisted in the transaction between Plaintiff and Mr. Hughes. Defendant Kapral continued his investigation and spoke with several other former customers and former employees of Erie Gem and Watch.

4

Between March 18, 2006, and March 27, 2006, Defendant Kapral collected voluntary sworn affidavits from five more former customers of Erie Gem and Watch: Mr. Michael Fall, Ms. Laurene Solak, Ms. Dolores Thompson, Ms. Christine Peppone, and Ms. Tina Mason.  In addition, during this same time period, Defendant Kapral collected voluntary sworn affidavits from two more former employees of Erie Gem and Watch.  On April 5, 2006, Defendant Kapral arrested Plaintiff, whose arrest was reported in the news media shortly thereafter.  Following those reports, dozens more former customers of Erie Gem and Watch came forward to report that they had been victims.

Plaintiff was arraigned on charges including grand larceny and scheme to defraud, which were ultimately dismissed because Plaintiff was denied the opportunity to testify before the Grand Jury.  The Court's dismissal was without prejudice, and left the People free to re-present the case.

Familiarity with the remaining undisputed material facts of this action, as well as the disputed material facts, as set forth in the parties' Rule 7.1 Statement and Rule 7.1 Response, is assumed in this Decision and Order, which (again) is intended primarily for review by the parties.  (*Id*.)

## C.     Defendants' Motion

Generally, in support of their motion to dismiss and/or for summary judgment, Defendants argue as follows: (1) the cause of action for malicious prosecution should be dismissed because, based on the factual allegations of Plaintiff's Amended Complaint and/or the admissible record evidence adduced by the parties, the prosecution against Plaintiff was supported by probable cause and the prosecution did not end in a favorable termination, as a

matter of law; (2) the cause of action for malicious abuse of process should be dismissed for failure to allege facts plausibly suggesting, and/or adduce admissible record evidence establishing, either the intent or collateral-objective elements of a malicious-abuse-of-process claim; (3) the cause of action for false arrest/false imprisonment should be dismissed because, based on the factual allegations of Plaintiff's Amended Complaint and/or the admissible record evidence adduced by the parties, probable cause existed to arrest Plaintiff, as a matter of law; (4) the claims against Defendant Kapral should be dismissed because, based on the factual allegations of Plaintiff's Amended Complaint and/or the admissible record evidence adduced by the parties, he is entitled to qualified immunity, as a matter of law; and (5) the *Monell* claim against the Town of DeWitt should be dismissed because, based on the factual allegations of Plaintiff's Amended Complaint and/or the admissible record evidence adduced by the parties, no underlying meritorious individual § 1983 claim exists, as a matter of law.  (*See generally* Dkt. No. 21, Attach. 11 [Defs.' Memo. of Law].)

In Plaintiff's response to Defendants' motion to dismiss (or in the alternative for summary judgment), he argues as follows: (1) Plaintiff's malicious prosecution claim should not be dismissed because (a) further discovery is needed to determine (i) whether the prosecution ended in a favorable termination, and (ii) whether an objective police officer would have believed from the evidence in front of him that a crime had been committed (i.e., whether Defendant Kapral had probable cause for commencing the proceeding against Plaintiff), and (b) Plaintiff has introduced evidence of Defendant Kapral's malice; (2) Plaintiff's malicious abuse of process claim should not be dismissed because Plaintiff has introduced evidence establishing both an intent to do harm as well as an evil motive and ulterior goal for Defendant Kapral's actions; (3)

Plaintiff's false arrest/false imprisonment claim should not be dismissed because further discovery is needed to determine whether Defendant Kapral had probable cause to arrest Plaintiff; (4) Defendant Kapral is not entitled to qualified immunity; and (5) Plaintiff's *Monell* claim should not be dismissed because Defendants' sole argument for dismissal is premised on dismissal of Plaintiff's claims against Defendant Kapral.  (*See generally* Dkt. No. 24, Attach. 1 [Plf.'s Response Memo. of Law].)

In their reply, Defendants essentially reiterate previously advanced arguments.  (*See generally* Dkt. No. 25, Attach. 3 [Defs.' Reply Memo. of Law].)  More specifically, Defendants argue as follows: (1) Plaintiff's false arrest and malicious prosecution claims should be dismissed because it is undisputed that Defendant Kapral had probable cause to arrest Plaintiff; (2) his malicious abuse of process claim should be dismissed because Plaintiff's response memorandum of law offers no plausible motive for Defendant Kapral's alleged malice; and (3) his *Monell* claim should be dismissed because Plaintiff's Amended Complaint fails to allege facts plausibly suggesting that the Town of DeWitt had a policy of failing to train or supervise its police officers.  (*Id.*)

## II.   RELEVANT LEGAL STANDARDS

Although discovery has not been completed, Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6), or in the alternative, for summary judgment under Fed. R. Civ. P. 56. In support of their motion, Defendants have submitted record evidence in the form of affidavits and exhibits.

"Where parties submit extra-pleading material such as affidavits and exhibits in connection with a motion to dismiss, a court has two options: it may either disregard such

material or treat the motion as one for summary judgment." *Amerol Corp. v. Am. Chemie-Pharma, Inc.*, 04-CV-0940, 2006 WL 721319, at *4 (E.D.N.Y. Mar. 17, 2006). "The latter option requires notice to the parties and the opportunity to present evidence outside the pleadings." *Amerol Corp.*, 2006 WL 721319, at *4 (citing *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 [2d Cir. 1995]). "Notice need not be express: '[t]he essential inquiry is whether the [party] should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or was taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings.'" *Id.* (quoting *Groden*, 61 F.3d 1053 [quoting *In re G. & A. Books*, *Inc.*, 770 F.2d 288, 294-95 [2d Cir. 1985], *cert. denied*, 475 U.S. 1015 [1986]). "Formal notice is not required where both sides have supplied the court with matters outside the pleadings." *Id.* "Where a plaintiff submits an affidavit in connection with his opposition to the defendant's motion to dismiss, the plaintiff has invited the conversion and is deemed to have notice of it." *Id.* (citing *Gurary v. Winehouse*, 190 F.3d 37, 43 [2d Cir. 1999]). "Finally, although the decision of whether to disregard extra-pleading materials or convert a dismissal motion into one for summary judgment is committed to the district court's discretion, such conversion *may* not be appropriate before the parties have completed discovery. *Id.* (citing *Lucas v. Planning Bd. of Town of LaGrange*, 7 F. Supp.2d 310, 319 [S.D.N.Y. 1998]); *Mann v. Meachem*, 929 F. Supp. 622, 627-28 (N.D.N.Y. 1996) (McAvoy, J.) (treating motion to dismiss, or, in the alternative, for summary judgment, as motion for summary judgment because "[d]iscovery [wa]s nearly completed . . . and affidavits ha[d] been submitted").

　　　Here, Plaintiff has submitted affidavits and exhibits in connection with his opposition to Defendants' motion to dismiss.  In addition, despite arguing (both in his memorandum of law and

in an attorney affidavit) that further discovery is necessary to address certain issues, Plaintiff has

not provided the Court with an affidavit that satisfies the requirements of Fed. R. Civ. P. 56(d).[2]

Instead, Plaintiff's attorney submitted a letter-brief, which indicated a need for further discovery

(Dkt. No. 22, Attach. 1), and an affidavit, filed with in opposition to Defendants' motion for

summary judgment, which indicated, *inter alia*, as follows: (1) he has not yet been able to depose

. . . [D]efendant or his supervisors; (2) he has not yet been able to locate for deposition Patrick

Quinn, the prosecutor who handled Plaintiff's criminal matter; (3) Mr. Quinn's testimony "is

critical to the defense and ultimate resolution of some fundamental factual and legal issues"; (4)

"Plaintiff has not had the chance to investigate the veracity of [Defendant] Kapral's claims or his

methodology . . . [and], there is a substantial question as to the veracity, completeness, and

reliability of the documents [D]efendants provided . . . as being the basis for their motion"; and

(5) evidence exists that Defendant Kapral "manufactur[ed] criminal charges against Plaintiff,"

which necessitates further discovery.  (Dkt. No. 24.)  At best, these facts indicate how a genuine

issue of material fact may exist with regard to certain elements of Plaintiff's claims.  However,

the Court cannot conceive of how these facts help establish a lack of probable cause to arrest

---

2       Pursuant to Fed. R. Civ. P. 56(d),"[i]f [the] nonmovant shows by affidavit or
declaration that, for specified reasons, it cannot present facts essential to justify its opposition,
the court may . . . (1) defer considering the motion or deny it; (2) allow time to obtain affidavits
or declarations or to take discovery; or (3) issue any other appropriate order."  Under Fed.
Civ. P. 56(d) (formerly Fed. R. Civ. P. 56[f]), the Second Circuit has established a four part test
when a nonmovant opposes summary judgment on the grounds that additional discovery is
needed.  *See Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (quoting *Meloff v. N.Y. Life
Ins. Co.*, 51 F.3d 372, 375 [2d Cir. 1995]); *Paddington Partners v. Bouchard*, 34 F.3d 1132,
1138 (2d Cir. 1994).  The nonmoving party must submit affidavits that establish "(1) what facts
are sought [to resist the motion] and how they are to be obtained, (2) how those facts are
reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to
obtain them, and (4) why the affiant was unsuccessful in those efforts."  *Gurary*, 190 F.3d at 43.

Plaintiff, in light of the statements in the affidavits secured by Defendant Kapral prior to arresting Plaintiff, as well as the Grand Jury's issuance of an Indictment, as discussed more fully below.  As a result, the Court will treat Defendants' motion as one for summary judgment.

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

### B.    Legal Standards Governing Plaintiff's Claims

Because the parties to this action have also demonstrated, in their memoranda of law, an accurate understanding of the relevant points of law contained in the legal standards governing Plaintiff's claims in this action, the Court will not recite, in their entirety, those legal standards in this Decision and Order, which (again) is intended primarily for review by the parties.  (Dkt. No. 21, Attach. 11 [Defs.' Memo. of Law]; Dkt. No. 24, Attach. 1 [Plf.'s Response Memo. of Law]; Dkt. No. 25, Attach. 3 [Defs.' Reply Memo. of Law].)

## III.    ANALYSIS

### A.    Plaintiff's Claim of Malicious Prosecution

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's malicious prosecution claim because, based on the factual allegations of Plaintiff's Amended Complaint and/or the admissible record evidence adduced by the parties, as a matter of law (1) the prosecution against Plaintiff was supported by probable cause, (2) the prosecution did not end in a favorable termination, and (3) Defendant Kapral is entitled to qualified immunity.

> 1.      **Whether the Prosecution Against Plaintiff Was Supported by Probable Cause**

Based on the current record, the Court accepts Defendants' first argument for two reasons.  First, regardless of the fact that certain individuals may have come forward and accused Plaintiff of stealing their property only after being informed, through the media, that Plaintiff had stolen the property of others, it is undisputed that, prior to this media announcement, an individual named Michael Fall submitted a criminal complaint against Plaintiff, in which he stated as follows: (1) in July of 2003, he "brought several pieces of jewelry to [Plaintiff] to have [Plaintiff] sell for [him]"; (2) "[a]mong those pieces was a [d]iamond ring that [Plaintiff] appraised at around $3500.00"; (3) "[a]round May of 2004 [he] contacted [Plaintiff] and found out that [Plaintiff] sold [the] diamond ring"; (4) "[Plaintiff] provided [him] with documentation stating that the ring sold for $3425.00 and that [he] would receive $3082.00 after [Plaintiff] took [Plaintiff's] fee for selling it"; (5) "[a]round February of 2005 [he] sent [Plaintiff] because [Plaintiff] still had not paid [him] for [the] ring"; (6) "[Plaintiff] sent [him] a letter acknowledging that [Plaintiff] received his concerns but offered no answers as to when [he] would get paid"; (7) "[Plaintiff] also said something to the effect that [Plaintiff] expected a year to pay [him]"; and (8) after making attempts to recover his money "many times," in early March of 2006, he stopped by Plaintiff's store "to find out [Plaintiff] was no longer in business."  (Dkt. No. 23, Attach. 1, at 12.)

In his Rule 7.1 Response to Defendants' Rule 7.1 Statement, Plaintiff denies Defendants' statement that "Michael Fall stated [in an affidavit] that [Plaintiff] had sold a valuable ring belonging to him on a consignment basis, but following the sale, [Plaintiff] never paid Mr. Fall the proceeds from the purchase price, amounting to $3082.00."  (Dkt. No. 24, Attach. 6, at ¶ 7.)  However, in support of his denial, Plaintiff cites to a paragraph within his own affidavit, in

11

which he states only as follows:

> Another failure to conduct a proper investigation by . . . [D]efendant
> Kapral involves the allegations by Michael Fall. Originally, Fall
> brought me five or six items to sell for him. At times, six months
> would go by without me hearing from Mr. Fall. I did sell four or five
> items for him[] for which I paid him directly. One item he decided to
> take back so as to give to a family member. The last transaction I had
> with Mr. Fall was when Fall consigned to me an engagement diamond
> from a failed engagement. That diamond was among those items
> discovered missing at the time of the Zalisniak theft. In the month
> prior to my arrest I tried to reach Mike Fall to give him his money
> from the restitution payments of Irma Zalisniak. He never called back.
> I wound up giving the money to my attorney Robert Tisdell. Mr.
> Tisdell called and wrote Fall for nearly three months with the
> $3,000.00 check sitting in a folder on Tisdell's desk. Mr. Tisdell never
> got a response. Finally, my attorney sent the check with a letter via
> Certified Mail to Fall's last known address. The letter was signed for
> and picked up. The check was cashed. Neither Mr. Tisdell nor I ever
> heard anything from Mike Fall and still have not to this day other than
> to see his statement to Kapral.

(Dkt. No. 24, Attach. 2, at ¶ 36.)  In other words, Plaintiff does not deny that Michael Fall

submitted the above-described criminal complaint against him.  Instead, Plaintiff denies that the

statements made by Mr. Fall in the criminal complaint are true.

As an initial matter, Defendants have submitted record evidence that belies Plaintiff's

statement that Mr. Fall's "diamond was among those items discovered missing at the time of the

Zalisniak theft."  (Dkt. No. 23, Attach. 1, at 17.)  However, even assuming that Mr. Fall's

statements were false, Plaintiff has failed to allege facts plausibly suggesting (let alone adduce

admissible record evidence establishing) that Defendant Kapral knew, or had any reason to

believe, that these statements were false.  Rather, Plaintiff simply argues that Defendant Kapral

should have more diligently investigated the veracity of Mr. Fall's statements.

"An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995). In *Singer*, the plaintiff brought, among other things, a false arrest claim against a police officer who arrested him for larceny based on a signed a criminal information and a supporting deposition reciting the complainant's version of the incident. *Singer*, 63 F.3d at 119. The complainant stated in his supporting deposition that the plaintiff had asked him (a grocery store clerk) for permission to take certain food items, and indicated that he would come back later to pay for them. *Id*. The complainant also stated in his supporting deposition that he "expressly told [the plaintiff] it was not all right for [him] to take the food items from the store without paying." *Id*. In affirming the district court's determination that the officer had probable cause to arrest the plaintiff, the Court of Appeals stated as follows:

> The circumstances of this arrest raise questions as to the motivation of the arresting officer, the village officials, even the store employees; but motivation is not a consideration in assessing probable cause . . . . The facts as presented to [the officer] by [complainant] established each of the elements of the crime of larceny. Under these circumstances, [the officer] had probable cause to arrest [the plaintiff] for the crime of petit larceny.

*Id*.

Here, as in *Singer*, the facts as presented to Defendant Kapral by Michael Fall established each of the elements of the crime of larceny except arguably the scheme to defraud requirement.[3]

---

[3]     Under New York law, "[a] person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself . . . , he wrongfully . . . withholds such property from an owner thereof." N.Y. Penal Law § 155.05(1) (McKinney 2010). "Larceny includes a wrongful . . . withholding of another's property, with the intent [to deprive that person of his property or misappropriate the same], committed . . . [b]y

13

More specifically, Michael Fall swore in his complaint of March 27, 2006, that (1) Plaintiff had represented that he could sell a diamond ring (valued at over three thousand dollars) for Mr. Fall, in exchange for a commission fee, (2) based on this representation, Mr. Fall gave Plaintiff the ring, (3) Plaintiff did in fact sell the ring, (4) Plaintiff nonetheless had not paid Mr. Fall as of March 27, 2006 (almost two years after the ring was sold), and (5) Plaintiff was no longer in business.  (Dkt. No. 23, Attach. 1, at 12.)  Again, Plaintiff has failed to allege facts plausibly suggesting (let alone adduce admissible record evidence establishing) that Defendant Kapral had reason to doubt the veracity of Mr. Fall's statement.[4]  In addition, the scheme-to-defraud element was established through the criminal complaints, filed before Plaintiff was arrested, by individuals who similarly claimed that Plaintiff had taken jewelry from them on consignment, and had not paid them a percentage of money from a sale or returned the jewelry despite repeated demands for either.  (*See generally* Dkt. No. 23, Attach. 1.)

---

false promise."  N.Y. Penal Law § 155.05(2)(d) (McKinney 2010).  "A person obtains property by false promise when, pursuant to a scheme to defraud, he obtains property of another by means of a representation, express or implied, that he . . . will in the future engage in particular conduct, and when he does not intend to engage in such conduct . . . ."  (*Id*.)  A person is guilty of grand larceny in the fourth degree when he steals property and . . . [t]he value of the property exceeds one thousand dollars."  N.Y. Penal Law § 155.30.  "A person is guilty of grand larceny in the third degree when he or she steals property and . . . the value of the property exceeds three thousand dollars."  N.Y. Penal Law § 155.35.

[4]       To the contrary, based on the statements provided by the other complainants, as well as two of Plaintiff's former employees, Defendant Kapral had overwhelming evidence to belief Mr. Falls' statements.  Moreover, "[t]he veracity of citizen complain[an]ts who are the victims of the very crime they report to the police is assumed."  *Miloslavsky v. AES Eng'g Soc'y, Inc*., 808 F.Supp. 351, 355 (S.D.N.Y. 1992) (citing *Adams v. Williams*, 407 U.S. 143, 148 [1972]), *aff'd*, 993 F.2d 1534 [2d Cir. 1993]); *accord Lee v. Sandberg*, 136 F.3d 94, 103 (2d Cir. 1997) (quoting *Miloslavsky* with approval); *see also* 2 Wayne LaFave, Search and Seizure: A Treatise On The Fourth Amendment § 3.4(a), at 205 (4th ed. 2007) (noting that the Supreme Court has "proceeded as if veracity may be assumed when information comes from the victim of . . . criminal activity" [citing *Chambers v. Maroney*, 399 U.S. 42 [1970]).

The Court would add only that, the fact that Plaintiff may have repaid the complainants after the date of his arrest is irrelevant to the issue of whether Defendant Kapral had probable cause to arrest Plaintiff on April 5, 2006.  Moreover, absent record evidence that, prior to drafting the criminal complaints, Plaintiff had communicated to the complainants that he intended to return their property and/or pay them the value of the property (after his commission), and Defendant Kapral was made aware of this communication, the fact that Plaintiff may not have been able to repay the complainants at the time of his arrest does not negate a finding that Defendant Kapral had probable cause to arrest him for larceny. Furthermore, the Court rejects Plaintiff's argument that Defendant Kapral manufactured probable cause by (1) taking  "efforts to assure that [Plaintiff's] customers . . . were unable to reach [him] to give the appearance that [Plaintiff] had absconded with their property or money[,]" and (2) telling Plaintiff's "clients . . . that [Plaintiff] had 'stolen' their property despite . . . knowing that was not true or at least lacking any proof thereof."  (Dkt. No. 24, Attach. 1, at 5-6, 12.)  It is undisputed that Plaintiff took jewelry from the complainants on consignment, that he therefore had an obligation to return their jewelry or pay them for it, and that certain complainants made repeated efforts to contact Plaintiff regarding their property before contacting Defendant Kapral, all of which were unsuccessful.  Plaintiff's argument that Defendant Kapral did not have probable cause to believe that Plaintiff had committed larceny by withholding the complainants' property despite their requests for the return of this property is unpersuasive, if not disingenuous.

Second, contrary to Plaintiff's statement in his affidavit that, "[t]o the best of [his] knowledge, [he] was never indicted for any of the crimes for which [he] was arrested[,]" there is admissible record evidence, submitted by Plaintiff, that he was in fact indicted on one count of

scheme to defraud in the first degree, and eight counts of grand larceny in the fourth degree. (Dkt. No. 24, Attach. 5 at 5-6.)  The fact that this Indictment was subsequently dismissed does not change the fact that it was issued.

"In New York, the fact that the Grand Jury returned an indictment creates a presumption that the arrest and indictment were procured with probable cause." *Rowe v. City of Rochester*, 00-CV-6333, 2002 WL 31974537, at *14 (W.D.N.Y. Dec. 23, 2002) (citing *Bernard v. United States*, 25 F.3d 98 [2d Cir. 1994]; *Colon v. City of New York*, 60 N.Y.2d 78, 83 [N.Y. 1983] ["[T]he trial court may not weigh the evidence upon which the police acted . . . after the indictment has issued"]).  To rebut this presumption, the plaintiff "must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Rowe*, 2002 WL 31974537, at *14 (quoting *Colon*, 455 N.E.2d at 1251); *see also White v. Frank*, 855 F.2d 956, 961 (2d Cir. 1988) (stating that a grand jury indictment is prima facie evidence of probable cause that may be rebutted by proof that the defendant misrepresented, withheld or falsified evidence).

Here, Plaintiff has not alleged facts plausibly suggesting (let alone adduced admissible record evidence establishing) that the Indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.[5]  Instead, Plaintiff

---

[5]    *See Harris v. New York*, 756 N.Y.S.2d 302, 304 (N.Y. App.Div. 3d Dept. 2003) ("Here, claimant does not allege that defendant committed fraud or perjury or suppressed evidence. Rather, it is claimant's contention that the State Police undercover agent deviated from the normal and usual practice in identification of claimant by failing to check the ownership of the vehicle in which the drug seller arrived and by failing to make a confirmatory photo identification or view a photo array until six months after the drug sale. The testimony adduced at trial established that all the officers involved during the subject drug 'buy' followed standard operating procedures and claimant failed to substantiate her claim to the contrary. . . . 'While confirmatory identification procedures could have been followed, their omission does not establish improper (much less egregious) police conduct. . . .  Under the circumstances, the procedures followed do not constitute improper police activity 'as to demonstrate an intentional

hinges his argument (that the Grand Jury Indictment does not establish probable cause for his

arrest) on the fact that, based on the current record, (1) only one of the victims named in the

Indictment filed a criminal complaint prior to Plaintiff's arrest,[6] and (2) there is record evidence

that this individual's "supporting affidavit, used by [Defendant] Kapral to secure his arrest

warrants[,] was inaccurate, incomplete, and based on a misrepresentation . . . by [Defendant]

Kapral."  (Dkt. No. 24, Attach. 1, at 7-9, 11-12.)

Plaintiff is correct that, with the exception of one victim, the Indictment charged him

with committing grand larceny against victims who did not file criminal complaints prior to his

arrest.  However, the Indictment also charged Plaintiff with a scheme to defraud in the first

degree, a crime for which Defendant Kapral also arrested him.[7]  In addition, similar to the felony

complaint, the Indictment specifically stated, among other things, that Plaintiff, "in his capacity

as the owner of Erie Gem and Watch did enter into agreements with *dozens of customers* to sell

---

or reckless disregard for proper procedures.") (internal quotation marks and citations omitted);
*Colon*, 60 N.Y.2d at 83 (noting that the presumption of probable cause that arises pursuant to a
grand jury indictment, which is subsequently dismissed, is not overcome by an officer's failure
to pursue "further avenues of investigation" because "failure to pursue the investigation is not
the equivalent of fraud or the suppression of evidence").

[6]       Plaintiff argues that "[a] scheme to defraud requires more than one person and
Ms. Mason is the lone person from whom [Defendant] Kapral took a statement prior to
Plaintiff's arrest and who did in fact turn up in an indictment."  (Dkt. No. 24, Attach 1, at 9.)

[7]       Prior to arresting Plaintiff, as part of his investigation, Defendant Kapral spoke to
two of Plaintiff's former employees, who indicated, among other things, as follows: (1) Plaintiff
had taken jewelry on consignment from a number of individuals; (2) between September 2005
and March 2006, more than twenty customers called Plaintiff's store to retrieve their property or
complain about a check written from the sale of their jewelry, which bounced; (3) Plaintiff was
made aware of that these individuals sought to retrieve their property (or be compensated from
the sale of the property), yet he did nothing to resolve the situation; and (4) often times Plaintiff
would lie to these customers about the status of their property, or have his employees lie for him.
(Dkt. No. 23, Attach. 2.)  These statements form an alternative basis for concluding that
Defendant Kapral had probable cause to arrest Plaintiff (for the crime of scheme to defraud in
the first degree).

numerous items of jewelry, valued in the tens of thousands of dollars, on a consignment basis and subsequently never paid the customers nor returned the items."[8]  (Dkt. No. 24, Attach. 5, at 5 [emphasis added].)  Simply put, the Grand Jury returned an Indictment against Plaintiff for one of the crimes for which he was arrested.  As a result, Plaintiff's argument that the Grand Jury Indictment does not establish probable cause for his arrest is without merit.

The Court would add only that the fact that a judge has subsequently dismissed an indictment based on the failure to comply with a state procedural rule (for example, N.Y. C.P.L. s 190.50[5], which requires that a defendant be provided an opportunity to testify before the Grand Jury in certain circumstances) does not, in and of itself, rebut the presumption of probable cause created by that indictment.[9]  Indeed, the presumption of probable cause created by an indictment is not even vitiated, at least in New York State, by a dismissal of the indictment based on a discovery that the people lack evidence to establish a prima facie case of guilt.[10]

---

[8]     The felony complaint stated that (1) the scheme to defraud was perpetrated against Michael Hughes, Michael Falls, and "numerous other customers," and (2) "th[e] systematic course of conduct with the numerous other customers involved false promises of money being paid to them from jewelry consignments and false promises of product being delivered after being paid by said customers."  (Dkt. No. 23, Attach. 3, at 2.)

[9]     *Shales v. City of Rochester*, 569 N.Y.S.2d 910, 911-12 (N.Y. Sup. Ct., Monroe County, 1991) (explaining, *inter alia*, that presumption of probable cause would have flowed from grand jury indictment even if indictment had violated provision of N.Y. C.P.L. s 190.50, requiring the testimony of certain witnesses before the grand jury); *see also Romero v. State*, 742 N.Y.S.2d 701, 703-04 (N.Y. App. Div., 3d Dept. 2002) (affirming Court of Claims' decision ruling, *inter alia*, that presumption of probable cause flowed from grand jury indictment even though that indictment had subsequently been dismissed because it violated Judiciary Law § 476-a(1), which only authorized the Attorney General to prosecute claimant by civil action); *Witcher v. Children's Television Workshop*, 589 N.Y.S.2d 454, 455-56 (N.Y. App. Div., 1st Dept. 1992) (affirming trial court decision ruling, *inter alia*, that presumption of probable cause flowed from grand jury indictment even though that indictment had subsequently been dismissed upon motion of district attorney for failure to comply with N.Y. C.P.L. s 30.30, which requires actions to be tried within six months of commencement of criminal action).

[10]     *See Bernard v. United States*, 25 F.3d, 98, 101, 104 (2d Cir. 1994), *aff'g*, 93-CV-0605, 1993 WL 336953, at *3, 7 (S.D.N.Y. Sept. 3, 1993) (holding, *inter alia*, that

## 2.      Whether the Prosecution Ended in a Favorable Termination

Based on the current record, the Court also accepts Defendants' second argument that the

prosecution did not end in a favorable termination.  In his Amended Complaint, Plaintiff alleges

that "the Indictment against [him] was dismissed by [the] Hon[orable] William Walsh." (Dkt.

No. 6, at ¶ 22.)  In his response statement of undisputed material facts, "Plaintiff admits that the

[I]ndictment against him was dismissed because Plaintiff was denied the opportunity to testify

before the Grand Jury." (Dkt. No. 24, Attach. 6, at ¶ 19.)  Plaintiff further admits that "[t]he

Court's dismissal [of the Indictment] was without prejudice, and left the People free to re-present

the case." (*Id*. at ¶ 20.)

"Under New York law, the plaintiff in a malicious prosecution claim bears the burden of

establishing that the underlying action terminated in his favor."  *Garrett v. Port Authority of New*

*York and New Jersey*, 04-CV-7368, 2006 WL 2266298, at *4 (S.D.N.Y. Aug. 8, 2006) (citing

---

presumption of probable cause flowed from grand jury indictment even though that indictment
had subsequently been dismissed upon motion of district attorney based on discovery that
defendant had been misidentified as culprit); *Colon*, 60 N.Y.2d at 80-84 (holding that
presumption of probable cause flowed from grand jury indictment even though that indictment
had subsequently been dismissed upon motion of district attorney based on discovery that the
people lacked evidence to establish a prima facie case of guilt); *Harris*, 756 N.Y.S.2d at 304
(affirming trial court decision ruling, *inter alia*, that presumption of probable cause flowed from
grand jury indictment even though that indictment had subsequently been dismissed upon motion
of district attorney based on discovery that defendant had been misidentified as culprit); *accord,*
*Boomer v. New York*, 733 N.Y.S.2d 518, 519-21 (N.Y. App. Div., 3d Dept. 2001); *cf. Kenyon v.*
*New York*, 499 N.Y.S.2d 509, 510-11 (N.Y. App. Div. 3d Dept. 1986) (affirming trial court
decision ruling, *inter alia*, that presumption of probable cause flowed from grand jury indictment
even though that indictment had subsequently been dismissed "in the interest of justice" because
"a judgment of conviction would serve no useful purpose in this case and would constitute an
injustice"); *Graham v. City of New York*, 720 N.Y.S.2d 452, 452-53 (N.Y. App. Div., 1st Dept.
2001) (affirming trial court decision ruling, *inter alia*, that presumption of probable cause flowed
from grand jury indictment even though that indictment had subsequently been dismissed);
*accord, Leung v. City of New York*, 627 N.Y.S.2d 369, 370 (N.Y. App. Div., 1st Dept. 1995);
*Eisenkraft v. Armstrong*, 567 N.Y.S.2d 840, 841 (N.Y. App. Div., 2d Dept. 1991).

*MacFawn v. Kresler*, 88 N.Y.2d 859 [N.Y. 1996]).[11]  "Although the cases in this area suffer from some 'confusion,' there are two primary means of proving favorable termination: '(1) an adjudication of the merits by the tribunal in the prior action[;] or (2) an act of withdrawal or abandonment on the part of the [prosecutor].'"  *Garrett*, 2006 WL 2266298, at *4 (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1486 [2d Cir. 1996]).  "With respect to the first prong, termination is favorable to the plaintiff when it 'involves the merits and indicates the accused's innocence.'"  *Id*. (quoting *MacFawn*, 88 N.Y.2d at 860).

With respect to the second prong, "[a]lthough the abandonment prong is not obsolete, . . . numerous New York cases have narrowed the circumstances in which it may be used to prove favorable termination."  *Id*. (citations omitted).  "For example, in *MacFawn*, the Court of Appeals concluded that the dismissal for legal insufficiency was not a favorable termination for purposes of malicious prosecution."  *Id*. at *5 (citing *MacFawn*, 88 N.Y.2d at 860).  "The *MacFawn* court reasoned that, because the action could be refiled, it was not terminated, either favorably or unfavorably."  *Id*. (citing *MacFawn*, 88 N.Y.2d at 860).  "It reached this conclusion even though the prosecution had not opted to refile the charging instrument."  *Id*. (citing *MacFawn*, 88 N.Y.2d at 860); *see also O'Brien*, 101 F.3d at 1487 ("One might have expected the [*MacFawn*] court to equate such a lack of action with an abandonment on the part of the State."). "The opposite rule would[] (1) risk the possibility of inconsistent judgments, . . . , (2) allow parallel litigation of the underlying probable cause determination, . . . , and (3) provide incentives for prosecutors and plaintiffs not to settle cases to avoid future malicious prosecution

---

[11]     "To prevail on a [42 U.S.C.] § 1983 malicious prosecution claim, a plaintiff must establish the elements of malicious prosecution under state law, and then show that his Fourth Amendment rights were violated after legal proceedings were initiated."  *Garrett*, 2006 WL 2266298, at *6 (citing *Fulton v. Robinson*, 289 F.3d 188, 195 [2d Cir. 2002]).

claims." *Id*. (citations omitted).

Here, Plaintiff has failed to allege facts plausibly suggesting (let alone adduce admissible record evidence establishing) that the dismissal was based on an adjudication of the merits at the time he filed his Complaint.  Rather, Plaintiff has admitted that the Indictment was dismissed, *without prejudice*, because Plaintiff was denied the opportunity to testify before the Grand Jury (i.e., on procedural grounds).  "Thus, the termination was not indicative of [Plaintiff's] innocence for the purposes of his malicious prosecution claim."  *Garrett*, 2006 WL 2266298, at *5.

In addition, Plaintiff has failed to allege facts plausibly suggesting (let alone adduce admissible record evidence establishing) that the prosecutor expressly abandoned the larceny and/or fraud charges at the time he filed this action.[12]  *See Bordeau v. Village of Deposit*, 113 F. Supp.2d 292, 299 (N.D.N.Y. 2000) (Hurd, J.) ("A dismissal without prejudice *that indicates abandonment by the prosecutor* meets the requirements of the favorable termination element of a malicious prosecution claim.") (emphasis added).  Moreover, Plaintiff admits that the charges against him may be re-presented.[13]  As discussed above, New York courts have concluded that

---

[12]        The Court notes that Plaintiff alleges in his Amended Complaint that, "[t]hough given the chance to do so, the District Attorney refused to re-present the case to a Grand Jury because, according to an Assistant District Attorney, they knew that Plaintiff had done no wrong, that . . . [D]efendant Kapral's allegations were just a bill of goods, and that the District Attorney's office informed . . . [D]efendant Kapral that they did not want to see any more paperwork with . . . Plaintiff . . . and . . . [D]efendant Kapral's name on it."  (Dkt. No. 6, at ¶ 23.)  However, this allegation amounts to an allegation only that, as of the time of the drafting of the Amended Complaint, the District Attorney had not re-presented the case to a Grand Jury.  Noticeably absent from Plaintiff's Amended Complaint is any allegation that the District Attorney expressly abandoned the charges.  In fact, to the contrary, as of the filing date of this Decision and Order, it is undisputed that the District Attorney still has the ability to re-present the charges to a Grand Jury.

[13]        Grand larceny in the fourth degree (in which the value of the property stolen exceeds one thousand dollars) is a Class E felony.  N.Y. Penal Law § 155.30 (McKinney 2010).

similar state dispositions (i.e., dispositions based on procedural grounds) did not constitute withdrawal or abandonment.  *See Garrett*, 2006 WL 2266298, at *5 (collecting cases). Therefore, Plaintiff has not satisfied either prong of the test for the favorable termination element under New York law.

**3.      Whether Defendant Kapral is Entitled to Qualified Immunity**

Even assuming, for the sake of argument, that the prosecution against Plaintiff was not supported by probable cause, based on the criminal complaints and affidavits gathered by Defendant Kapral prior to arresting Plaintiff, it was certainly supported by arguable probable cause because it was objectively reasonable for Defendant Kapral to rely on the statements sworn to in the criminal complaints.[14]

---

Grand larceny in the third degree (in which the value of the property stolen exceeds three thousand dollars) is a Class D felony.  N.Y. Penal Law § 155.35 (McKinney 2010).  Scheme-to-defraud in the first degree is a Class E felony.  N.Y. Penal Law § 190.65 (McKinney 2010).  As a result, a prosecution for any of these crimes "must be commenced within five years after the commission."  N.Y. Crim. Proc. § 30.10(2)(b) (McKinney 2010).  However, "[w]hen a prosecution for an offense is lawfully commenced within the prescribed period of limitation . . . , and when an accusatory instrument upon which such prosecution is based is subsequently dismissed by an authorized court under directions or circumstances permitting the lodging of another charge for the same offense or an offense based on the same conduct, the period extending from the commencement of the thus defeated prosecution to the dismissal of the accusatory instrument does not constitute a part of the period of limitation applicable to commencement of prosecution by a new charge."  N.Y. Crim. Proc. § 30.10(4)(b) (McKinney 2010).  Although Plaintiff was arrested on April 5, 2006, the Indictment was not dismissed until October 2006.  Therefore, criminal charges may be filed against Plaintiff until October 2011.

[14]      *See Jean v. City of New York*, 08-CV-0157, 2009 WL 3459469, at *6 (E.D.N.Y. Oct. 22, 2009) ("Simply asking a few more questions to get a more complete picture might have even saved Jean from the burden of undergoing stressful and time-consuming prosecution. Hindsight, of course, is 20-20. But the law does not require hindsight, let alone a perfect investigation prior to establishing probable cause to arrest."); *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) (noting that, in determining whether an officer had probable cause to make an arrest, courts "consider the facts available to the officer at the time of arrest," and that "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest"); *Bourguignon v. Guinta*, 247 F. Supp.2d 189, 193 (D. Conn. 2003) (noting

For these reasons, Plaintiff's claim of malicious prosecution is dismissed.[15]

**B.      Plaintiff's Claim of False Arrest**

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of Plaintiff's false arrest claim because, based on the factual allegations of Plaintiff's Amended Complaint and/or the admissible record evidence adduced by the parties, as a matter of law (1) probable cause existed to arrest Plaintiff, and (2) Defendant Kapral is entitled to qualified immunity.  Based on the current record, the Court accepts Defendants' second argument for the first reason stated in Part III.A.1. of this Decision and Order.[16]  *See Caldarola v. Calabrese*, 298 F.3d 156, 161 (2d Cir. 2002) (noting that "the existence of probable cause is an absolute defense to a false arrest claim and affords the arresting officer qualified immunity from litigation").  As a result, Plaintiff's claim of false arrest is dismissed.

---

that the police may rely on victim or witness statements to determine probable cause, "regardless of the ultimate accurateness or truthfulness of the statements").

[15]      The Court would only add that, although record evidence establishes that Defendant Kapral swore to and signed a felony complaint, then-Assistant District Attorney Quinn appears to have made the decision to prosecute Plaintiff, and the Amended Complaint "offers no non-speculative, non-conclusory allegations sufficient to support the conclusion that Defendant Kapral misled or pressured the prosecutor."  *Bernstein v. City of New York*, 06-CV-0895, 2007 WL 1573910, at *6 (S.D.N.Y. May 24, 2007).  "The District Attorney's 'intervening' decision to pursue a criminal charge against Plaintiff broke the chain of causation between the alleged unlawful arrest and Plaintiff's subsequent prosecution."  *Bernstein*, 2007 WL 1573910, at *6 (citing *White v. Frank*, 855 F.2d 956, 962 [2d Cir. 1988] ["The exercise of independent judgment by the public prosecutor and his active role in initiating criminal prosecutions may decrease the likelihood that a complaining witness will be considered to have 'caused' or 'procured' the prosecution, thus defeating grounds for liability under this initial prong"]).  As a result, a fourth alternative ground exists for dismissing this claim–i.e., that Plaintiff has failed to allege facts plausibly suggesting and/or adduce admissible record evidence establishing the "initiation of a proceeding" element of his malicious prosecution claim.

[16]      The Court notes that "the presumption of probable cause arising from an indictment 'applies only in causes of action for malicious prosecution and is totally misplaced when applied in false [arrest] actions.'"  *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 [N.Y. 1975]).

### C.     Plaintiff's Claim of Malicious Abuse of Process

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of this claim because, based on the factual allegations of Plaintiff's Amended Complaint and/or the admissible record evidence adduced by the parties, as a matter of law, (1) Plaintiff has failed to allege facts plausibly suggesting, and/or adduce admissible record evidence establishing either the intent or collateral-objective elements of a malicious-abuse-of-process claim, and (2) Defendant Kapral is entitled to qualified immunity.  Based on the current record, the Court accepts Defendants' first argument.

"Under New York law, a malicious abuse of process claim lies against a defendant who[] '(1) employs regularly issued legal process to compel performance or forbearance of some act[,] (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'"  *Abreu v. Romero*, 08-CV-10129, 2010 WL 4615879, at *8 (S.D.N.Y. Nov. 9, 2010) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 [2d Cir. 1994]).  "In the criminal context, malicious abuse of process is by definition a denial of procedural due process . . . . Procedural due process forbids the use of legal process for a wrongful purpose."  *Abreu*, 2010 WL 4615879, at *8 (citation omitted).  "In New York, such wrongful purposes have included economic harm, extortion, blackmail, and retribution."  *Id.* (citing *Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 404 [N.Y. 1975]).

In his Amended Complaint, Plaintiff alleges that Defendant Kapral's motivation for investigating and charging him was not based on citizen complaints of wrongdoing, but rather based on a desire for retribution for Plaintiff's letter of concern about alleged wrongdoing at the Hillbrook Detention Center.  (Dkt. No. 6, at ¶¶ 13, 28.)  In their memorandum of law in support

of their motion for summary judgment, Defendants argue that summary judgment is appropriate because (1) Plaintiff has "alleged absolutely no connection between [Defendant] Kapral or the DeWitt Town Police [and] the Hillbrook Detention Center, an Onondaga County facility[,]" and (2) "[t]he retaliatory motivation the [Amended] [C]omplaint insinuates is not plausibly supported by admissible factual allegations[, but instead by] . . . hearsay suggested 'upon information and belief.'"  (Dkt. No. 21, Attach. 11, at 16.)  In his response memorandum of law, Plaintiff argues that "Paragraphs 40 and 41 of [his] affidavit set forth facts sufficient that if found true, establish both an intent to do harm as well as an evil motive and ulterior goal for [Defendant] Kapral's actions."  (Dkt. No. 24, Attach. 1, at 15.)

In Paragraph 40, Plaintiff states as follows:

> During my ride with Kapral, he spoke continuously and almost without interruption in a state of clearly elevated excitement. He made the following statements: "Your life as you know it is over. You have no rights when I arrest you. After tomorrow's newspapers come out, you will no longer have a life in this town. You are not to speak to anyone in the building at 6565 Kinney road. You are not to go there or call anyone that works there. Everyone in that building is a witness against you and if you contact them I will arrest you again. If you write any more of your God Damn letters I will arrest you again. If you manage to plea bargain, and I know you already got God Damn Rossi and Tisdell, and you try to work in this town again I will arrest you over and over again until you can't afford to make bail. I've read your letters and you think you are smart but I am smarter."

(Dkt. No. 24, Attach. 2, at ¶ 40.)  In Paragraph 41, Plaintiff states as follows:

> The public news story of my arrest and the call for any persons who had transactions with me to call Scott Kapral actually started before my arrest in the morning via local television news. The Town of DeWitt Police Chief called for the termination of my employment at the Department of Corrections Facility at Hillbrook. The next day, I was suspended from using my teaching credentials by the New York State Teaching Certification Bureau. Persons with whom

> I have not done business with since the 1980s had been called
> by Kapral and asked about their transactions with me. Kapral
> told them that I was going to prison, that my assets were
> seized, and that I was a sociopathic liar and a conman that had
> a long undisclosed criminal history. None of that is or was true.
> Finally, Kapral instructed the owner of the building which
> housed my offices to remove my jewelers torch equipment
> from the shop, employees were not to speak to me, and that
> employees were not to complete the transactions that had been
> left. All my customers were ordered to be referred to Kapral.

(Dkt. No. 24, Attach. 2, at ¶ 41.)

As an initial matter, Plaintiff's response memorandum of law does not address Defendants' argument.[17]   Moreover, Plaintiff's argument regarding why summary judgment on his malicious-abuse-of-process claim is inappropriate is wholly unrelated to Defendants' argument that a Fed. R. Civ. P. 12(b)(6) dismissal of his malicious-abuse-of-process claim is appropriate (due to a lack of allegations in his Amended Complaint that plausibly suggest malicious abuse of process).   For these reasons, the Court deems the allegations in Plaintiff's Amended Complaint in support of this claim abandoned.[18]   In the alternative, the Court finds that

---

[17]      In particular, Paragraphs 40 and 41 of Plaintiff's affidavit do not mention or discuss the letter that Plaintiff allegedly wrote to the psychiatric office of the Onondaga County Corrections Department concerning the Hillbrook Detention Center.

[18]      *See, e.g., Robinson v. Am. Int'l Group, Inc.*, 08-CV-1724, 2009 WL 3154312 at *4 & n.65 (S.D.N.Y. Sept. 30, 2009) (finding that plaintiff her abandoned claims where she failed to address them in her opposition to defendant's summary judgment motion); *Ostroski v. Town of Southold*, 443 F. Supp.2d 325, 340 (E.D.N.Y. 2006) ("Because plaintiff's opposition papers did not address defendants' motion for summary judgment on this claim, the claim is deemed abandoned and summary judgment could be granted on that basis alone."); *Am. Tissue, Inc. v. DLJ Merchant Banking Partners, II, L.P.*, 03-CV-6913, 2006 WL 1084392, at *6 (S.D.N.Y. Apr. 20, 2006) ("Therefore, while ATI's motion to amend the complaint will be granted, because ATI has abandoned the control allegations upon which the Court previously sustained its actual fraudulent conveyance claims, and because it fails to address with any seriousness the legal sufficiency of those claims as amended, . . . those claims are hereby dismissed with prejudice."); *Singleton v. City of Newburgh*, 1 F. Supp.2d 306, 312 (S.D.N.Y. 1998) (holding that, where claim was alleged in the complaint but "not raised elsewhere in the record," claim was "abandoned" and summary judgment was appropriate).

Case 5:09-cv-00387-GTS-ATB   Document 26   Filed 01/11/11   Page 27 of 29

Plaintiff has "consented" to Defendants' facially meritorious argument for a dismissal of this action pursuant to Fed. R. Civ. P. 12(b)(6).[19]

In addition, the Court rejects Plaintiff's argument that "Paragraphs 40 and 41 of [his] affidavit set forth facts sufficient that if found true," establish that Defendant Kapral had any collateral objective outside the legitimate ends of the legal process. For example, these paragraphs do not establish (nor does any of the other record evidence adduced by Plaintiff establish) that the purpose for which Plaintiff was arrested was related to retribution, extortion, or a desire to put him out of business. While certainly Plaintiff's arrest may have had the end result of causing him to go out of business, something Defendant Kapral may have been aware of, none of the record evidence adduced by Plaintiff establishes that Defendant Kapral contacted him prior to his arrest, and suggested that, if he did something (i.e., paid back his customers), he would not be arrested. Moreover, Plaintiff has not alleged (let alone established) that, other than a brief encounter in 2004, he had any dealings with Defendant Kapral such that the Court could even infer that Defendant Kapral's arrest was connected to an improper purpose. At best, Plaintiff has offered evidence of malice. (Dkt. No. 24, Attach. 2, at ¶¶ 40-41.) However, "improper motive is not enough." *Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003) ("In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper purpose in instigating the action. . . . '[I]mproper motive is not enough.'" [quoting *Dean v. Kochendorfer*, 143 N.E. 229 [N.Y.1924]]); *see also Roeder v. Rogers*, 206 F. Supp.2d

---

[19]    *See Sorrentino v. Barr Labs., Inc.*, 09-CV-0591, 2010 WL 2026135, at *4 nn.8-10 (N.D.N.Y. May 20, 2010) (Suddaby, J.) (citing cases that stand for the proposition that, where plaintiffs do not respond to defendants' argument made in their motion to dismiss for failure to stay a claim, plaintiffs are deemed to have consented to defendants' argument, and thus defendants must only satisfy their "modest threshold burden" of demonstrating the facial merit of their argument).

406, 414 (W.D.N.Y. 2002) (dismissing abuse of process claim on summary judgment because "malicious motive, without more, does not give rise to [such] a cause of action" [citation and quotation marks omitted]); *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326-27 (N.Y. 1984) ("A malicious motive alone . . . does not give rise to a cause of action for abuse of process.").

Furthermore, based on the current record, the Court accepts Defendants' argument that Defendant Kapral is entitled to qualified immunity with regard to this claim.  This is because the Court has already concluded that Defendant Kapral had probable cause to arrest Plaintiff, and at the time Defendant Kapral commenced his investigation against Plaintiff and ultimately arrested him, it was not clearly established that the existence of probable cause was not an absolute defense to an abuse-of-process claim.  *Compare Abreu*, 2010 WL 4615879, at *8 (citing *Pierre v. City of New York*, 05-CV-5018, 2007 U.S. Dist. LEXIS 60707, at *40-41 [E.D.N.Y. Aug. 17, 2007] ["While probable cause is not an element of an abuse of process claim, under New York law, a showing of probable cause at the time process issued suffices . . . to establish excuse or justification for the purposes of a defense to abuse of process." [internal quotations omitted]), *with Conte v. County of Nassau*, 06-CV-4746, 2010 WL 3924677, at *22 (E.D.N.Y. Sept. 30, 2010) (finding that "probable cause is not an absolute defense to a claim of abuse of process[,]" relying, in part, on the Second Circuit's statement in *Weiss v. Hunna*, 312 F.2d 711, 717 [2d Cir. 1963] that "'the gist of the tort' of abuse of process, [as] distinguished from malicious prosecution, 'is not commencing an action or causing process to issue without justification, but misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish'").

For these reasons, Plaintiff's claim for malicious abuse of process is dismissed.

28

### D.    Plaintiff's Claim of Municipal Liability

As stated above in Part I.C. of this Decision and Order, Defendants seek the dismissal of this claim because municipal liability cannot exist in the absence of a viable claim against an individual, and here, Plaintiff's claims against Defendant Kapral cannot survive summary judgment.  Based on the Court's dismissal of the claims against Defendant Kapral, the Court accepts Defendants' argument.  *See Escalera v. Lunn*, 361 F.3d 737, 749 (2d Cir. 2004) (holding that a county was entitled to summary judgment where the claims against the individual defendants had failed).

As a result, Plaintiff's claim of municipal liability is dismissed.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 21) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 6) is **<u>DISMISSED</u>**.  The clerk is directed to enter judgment in favor of the defendant and close this case.

Dated: January 11, 2011
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge